IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 22, 2010

## STATE OF TENNESSEE V. MARY CATHLEENA BLINDT

**Direct Appeal from the Circuit Court for Bedford County**
**No. 16808, 16879, 16880, 16881      Lee Russell, Judge**

_____

**No. M2010-00180-CCA-R3-CD - Filed November 30, 2010**

_____

A Bedford County grand jury indicted the Defendant, Mary Cathleena Blindt, for three counts of prescription fraud, two counts of forgery, and one count each of theft, introduction of contraband into a penal facility, and failure to appear.  Following guilty pleas and a sentencing hearing, the Defendant received an effective sentence of ten years in the Tennessee Department of Correction.  On appeal, the Defendant argues that the trial court erred when it denied alternative sentencing, ordered consecutive sentencing, and imposed the maximum sentence within the range for three of the Defendant's convictions.  The Defendant also correctly notes an error on the judgment forms.  After a thorough review of the record and the applicable law, we affirm the trial court's judgments in part and remand the case for correction of an error on one of the judgment forms.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Thomas G. Kirkpatrick, Manchester, Tennessee,  for the Appellant, Mary Cathleena Blindt.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Charles F. Crawford, Jr., District Attorney General; Michael D. Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

## A. Guilty Plea Hearings

The April 2009 Bedford County grand jury indicted the Defendant for three counts of prescription fraud. The Defendant plead guilty to these charges with the sentences to be determined by the trial court. At the Defendant's June 2009 plea hearing, the State summarized the evidence supporting the Defendant's charges as follows:

On December 19th [2008], the sheriff's department received information about some possible bogus prescriptions having been called into the Wal-Mart here in Shelbyville. Allegedly, they were from a Dr. William McFeely, who has an office in Huntsville, Alabama.

The sheriff's department then called some of the other pharmacies to see if there was any other prescriptions that had been allegedly called in by Dr. McFeely's office. There was also one that had been called into McGee's Pharmacy, to be picked up that same day.

So the sheriff's department actually sat at the Wal-Mart waiting for the person - - someone to come pick up the prescription, and also waited at McGee's for someone to pick up the prescription. Ultimately, McGee's did call the sheriff's department and said someone was there at the drive-thru to pick up a prescription. And so, the Sheriff was the person closest to the scene, so he actually pulled in behind the car. The car actually drove off before actually getting the prescription picked up, but was in the drive-thru to pick it up, that was the purpose for pulling in the drive-thru.

There were two occupants, the defendant and one other lady. The other lady indicated she was just along for the ride, riding with the defendant up from Huntsville to – or from Alabama to Shelbyville, just kind of along for the ride. The defendant indicated that she was there to pick up a prescription for someone else.

Ultimately, she did give a pretty detailed statement to Detective Brian Farris about what she was doing. She admitted that she was picking up what she knew were bogus prescriptions at different pharmacies and returning the pills back to an individual in Alabama. She would sometimes keep some of the pills, and the other person was selling them or distributing them.

She was asked about other prescriptions which she picked up at other times in Bedford county and she admitted that there were at least two other occasions. One was at the Bedford Pharmacy, where she picked up some Lortab, that was a few days prior to this. And on that - - at the same day at Kroger pharmacy,

she picked up some Lortab. These prescriptions weren't in her name or her friend's name, they were in what we believe are essentially fictitious people[.] . . . [T]hey were not patients of Dr. McFeely. His office was called. He had not called these prescriptions in. And these folks were not patients of his. So they were fraudulent in all respects.

The August 2009 Bedford County grand jury indicted the Defendant for one count of theft over $500, two counts of forgery, one count of introduction of contraband into a penal facility, and one count of failure to appear. The Defendant entered a plea of guilty to all counts except the count of theft over $500 and one count of forgery, which the State dismissed. The Defendant's sentences were reserved for the trial court's determination. At the Defendant's October 2009 guilty plea hearing, the State summarized the evidence supporting the Defendant's charges as follows:

[T]he factual basis [for the forgery case] is, that on April 21st, [the victim] . . . report[ed] a theft of property. She indicated she'd stayed at [the Defendant's] apartment at Magnolia Village and fallen asleep. When she awoke, she noticed several items missing from her purse. . . .

The investigation by the police department revealed that the Defendant had a check on the victim's account that she had asked an individual named Kenny Cartwright to go with her or to take her to various banks in Murfreesboro, I think the first one they went to was closed, the next one they went to, she presented a check written on the victim's account. They wanted an ID, and she gave them her own driver's license, but the problem was it had a hole punched in it, which I think, apparently, is done when it's no longer valid, so the bank wouldn't take it because it had a hole punched in the [D]efendant's drivers license.

The [D]efendant and Mr. Cartwright then came to Heritage South Credit Union here in Shelbyville where the defendant got Mr. Cartwright to cash a $500 check written on [the victim's] account. . . .[A]s the check went back through the process, then, of course, Heritage South realized - - or got notice that the check was no good, there had been a stop-payment put on it by [the victim].

.   .   .

[As to the charge for introduction of contraband into a penal facility], the [D]efendant was being booked into the jail. And during a search of her person, a cellphone and some tobacco was discovered. The tobacco was actually not contraband, . . . but the cellphone, actually, is, there's a specific

provision within the statute about telecommunication devices. So she had a cellphone on her person.

Lastly, [ ] the [D]efendant had a multitude of charges in General Sessions Court to which she pled guilty. . . She received a sentence of 100 days in the Bedford County Jail and was given a report date to come to jail and did not report on that date.

## B. Sentencing Hearing

The Defendant was sentenced for each of the above named convictions on November 20, 2009. The following evidence was presented at the sentencing hearing: The Defendant testified that she had a prior criminal record, but had never been convicted of a felony before this case. She recalled that, in 2008, she was seriously injured in an automobile accident where a child died. Although the Defendant, as a passenger, was not a contributor to the accident, she was profoundly affected due to the child's death. As a result, she was prescribed narcotics for pain associated with her injuries and Xanax for anxiety, and she became addicted to both drugs.

The Defendant testified that she had been drinking and taking Xanax on the day she stole the victim's check and cashed it. Regarding her failure to appear conviction, the Defendant acknowledged that she did not report to jail on June 27 as required. The Defendant said that on July 7, several days after her report date, she was discovered unconscious and was admitted to Moccasin Bend Mental Health Institute for treatment based upon a drug overdose. The discharge summary from the Mental Health Institute indicated the Defendant used "huge amounts" of Xanax, OxyContin, and Lortab on a daily basis.

The Defendant agreed that some of the current convictions were committed while she was on bond, but explained to the court that she had still been using Xanax while out on bond. As of sentencing, she had been incarcerated for five months and one week. During this time, the Defendant took advantage of Alcoholics Anonymous meetings and the Celebrate Recovery courses offered in jail. The Defendant testified that she, at the time of the hearing, was in recovery and had regular contact with a sponsor for her recovery.

The Defendant testified that she had two minor children who were in her mother's custody. She said that, if the trial court ordered a probated sentence, she could either live with her brother or get her own apartment with money she had in savings.

Chad Webster, a police officer assigned to the Drug Task Force, testified that, in February 2009, the Defendant assisted the Drug Task Force as a confidential informant for a controlled buy. Webster testified that the transaction was completed and that the suspect was successfully prosecuted in that case. Webster described the Defendant's contact with the

Drug Task Force after the February controlled buy as "sketchy." He said she would call "here and there" and "say that she was going to do something" but then fail to reestablish contact. Thereafter, the Defendant was arrested and incarcerated for additional offenses and therefore unable to provide any further assistance to the Drug Task Force.

Laura Prosser, a probation officer with the State Department of Probation and Parole, drafted the Defendant's presentence report. Prosser testified that when she interviewed the Defendant for the report, the Defendant was so intoxicated that she could not spell her own children's names. Prosser said that this appointment was the second one scheduled with the Defendant because the Defendant failed to show for their first scheduled appointment.

Joy Compton, a Celebrate Recovery teacher at Bedford County Jail, testified that the Celebrate Recovery program is an elective program. Compton recalled that the Defendant arrived on time to every Wednesday night meeting, was not disruptive, and listened. Compton said that, if the Defendant were released from jail, Compton would be willing to continue to work with the Defendant on her recovery. Compton described the Defendant's progress in the Celebrate Recovery program: "I can tell a difference [from] when she first started, very angry, mad, didn't like what I said, to a young lady now that listens. Very much changed. Very different in her manner, very different."

At the conclusion of the hearing, the trial court enhanced the Defendant's sentences based upon her criminal record and upon the fact that she committed three of her offenses while released on bond. The trial court found that partial consecutive sentencing was appropriate based upon the Defendant's brief but extensive criminal history, and imposed an effective sentence of ten years. Finally, the trial court considered and denied alternative sentencing, finding that the Defendant's failure to seek help for her drug addiction until she was incarcerated indicated that her rehabilitation was "only going to occur with extensive incarceration." It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant claims that the trial court erred when it imposed the maximum sentence within the range for three of her convictions, imposed consecutive sentencing, and denied alternative sentencing.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts (2006). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record,

and gave due consideration to the factors and principles relevant to sentencing under the Sentencing Act, the appellate court may not disturb the sentence even if a different result was preferred. Tenn. Code Ann. § 40-35-103 (2006); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

## A. Enhancement Factors

The Criminal Sentencing Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2) and (d) (2006); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn.2008). The Tennessee Code allows a sentencing court to consider the following enhancement factors, among others, when determining whether to enhance a defendant's sentence:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community;

(13) At the time the felony was committed, one (1) of the following classifications was applicable to the defendant:

    (A)    Released on bail or pretrial release, if the defendant is ultimately convicted of the prior misdemeanor or felony;

T.C.A. § 40-35-114(1), (8), and (13)(A) (2009). If an enhancement factor is not already an essential element of the offense and is appropriate for the offense, then a court may consider the enhancement factor in its length of sentence determination. T.C.A. § 40-35-114 (2006). In order to ensure "fair and consistent sentencing," the trial court must "place on the record" what, if any, enhancement and mitigating factors it considered as well as its "reasons for the sentence." T.C.A. § 40-35-210(e). Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2003). The 2005 amendments deleted as grounds for appeal, however, a claim that the trial court did not properly weigh the enhancement and mitigating factors. See 2005 Tenn. Pub. Acts ch.

353, §§ 8, 9. In summary, although this Court cannot review a trial court's weighing of enhancement factors, we can review the trial court's application of those enhancement factors. T.C.A. § 40-35-401(d) (2006); *Carter*, 254 S.W.3d at 343.

The Defendant, a Range I standard offender, was sentenced for three counts of prescription fraud, Class D felonies, with a sentencing range of two to four years. *See* T.C.A. § 40-35-112(a)(4) (2009). The Defendant was also sentenced for forgery, introduction of contraband into a penal facility, and failure to appear, all Class E felonies, which have a sentencing range of one to two years. *See* T.C.A. § 40-35-112(a)(5).

The trial court applied three enhancement factors: enhancement factor (1), that the Defendant had a previous history of criminal convictions or criminal behavior; enhancement factor (8), that the Defendant, before sentencing, failed to comply with the conditions of a sentence involving release into the community; and enhancement factor (13), that the Defendant committed a felony while released on bail. T.C.A. § 40-35-114(1), (8), and (13)(A). The trial court then considered mitigating factors raised by the Defendant which included: mitigating factor (1), that the Defendant neither caused nor threatened serious bodily harm, and mitigating factor (10), that the Defendant cooperated with law enforcement authorities as a confidential informant. T.C.A. § 40-35-113 (1) and (10). The trial court found both mitigating factors applicable to this case, but it did not give "significant weight" to either factor. Based upon its findings, the trial court sentenced the Defendant to three years for each of her Class D felony convictions and to two years for each of her Class E felony convictions.

The Defendant only challenges the trial court's enhancement of the Class E felonies and its application of enhancement factors (1) and (8), along with the weight given by the trial court to the applicable mitigating factors. The Defendant first contends that the trial court improperly found applicable enhancement factor (1), a previous history of criminal convictions or criminal behavior. Our review of the record reveals that the trial court correctly applied enhancement factor (1) to each of the Defendant's Class E felony convictions. The Defendant, who was sentenced as a Range I standard offender, had at least thirteen prior misdemeanor convictions. Additionally, her admitted drug abuse, admission of additional involvement in prescription fraud, and pending charges in Alabama demonstrate that the Defendant has a "previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." *See* T.C.A. § 40-35-114(1). As such, the trial court properly applied enhancement factor (1) to each of the Defendant's convictions.

Further, the record reflects that the Defendant was sentenced to partially probated sentences for misdemeanors and that she failed to report to jail in June 2009. Thus, the record supports the trial court's finding that, "before trial or sentencing, the Defendant failed to comply with the conditions of a sentence involving release into the community." *See* T.C.A.

§ 40-35-114(8). As such, the trial court properly applied enhancement factor (8) to each of the Defendant's convictions.

Finally, the Defendant challenges the weight the trial court afforded the mitigating factors. The trial court's determinations as to the weight given to the mitigating and enhancement factors is at the trial court's discretion and not a basis for reversal by this Court. *See State v. Carter*, 254 S.W.3d at 345. The Defendant is not entitled to relief as to this issue.

## B. Consecutive Sentencing

The Defendant was sentenced for three convictions of prescription fraud, two of which occurred on the same date and the third occurring several days later. Additionally, the Defendant was sentenced for a conviction for forgery, a conviction for introduction of contraband in a penal facility, and a conviction for failure to appear. The trial court ordered the two convictions for prescription fraud that occurred on the same day to run concurrently, and the third conviction to run consecutively to the first two convictions. The final three convictions all occurred while the Defendant was released on bond. On this basis, the trial court ordered these convictions to run consecutively to the convictions for prescription fraud. The trial court ordered the forgery conviction and conviction for introduction of contraband into a penal facility to run concurrently to one another, and the conviction for failure to appear to run consecutively to the forgery and introduction of contraband in a penal facility convictions, for an effective sentence of ten years. The Defendant only challenges the trial court's order of consecutive sentencing as it applies to the prescription fraud convictions.

A trial court may impose consecutive sentences if the State proves by a preponderance of the evidence that the offender meets at least one of the criteria listed in the consecutive sentencing statute. T.C.A. § 40-35-115 (2009). In the case under submission, the trial court found criteria (2), that the Defendant "is an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2).

The Defendant admitted at the sentencing hearing that she had a criminal history. The presentence report shows convictions for driving under the influence, simple possession of a schedule III drug, simple possession of marijuana, misdemeanor reckless endangerment, misdemeanor theft, driving with a revoked license, three convictions for driving with a suspended license, worthless checks, and possession of alcohol under the age of twenty-one. The Defendant's criminal record begins at age eighteen and spans to age twenty-six, her age at sentencing. The Defendant also had two pending drug charges in Alabama and was arrested for theft in Georgia.

The presentence report and the testimony at the sentencing hearing show that the Defendant has multiple previous convictions. Thus, the record does not preponderate against the trial court's finding that the Defendant had an extensive criminal history. We conclude this was a sufficient basis for the trial court to conclude that the Defendant's record justified consecutive sentencing.

The Defendant in her brief argues that the trial court erred when it imposed consecutive sentencing without making *Wilkerson* findings. In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn.1995), our Supreme Court set forth additional requirements for consecutive sentences when the defendant is a "dangerous offender." The trial court in this case, however, did not apply the "dangerous offender" criteria in the Defendant's case. Thus, it did not err in not considering the *Wilkerson* factors. The Defendant is not entitled to relief on this issue.

The Defendant, however, correctly notes that the judgment form in case number 16880, for the introduction of contraband into a penal facility, reflects that this conviction is to run concurrently with itself rather than concurrently with the forgery conviction, case number 16879. As to this issue, we remand this case to the trial court for correction of the judgment form in case number 16880 to reflect that the conviction for the introduction of contraband into a penal facility shall run concurrently with the conviction for forgery, case number 16879.

### C. Denial of Alternative Sentencing

Due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. (footnote omitted). T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6) (emphasis added).

A defendant seeking probation bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2006). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2006), Sentencing Comm'n Cmts.

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-©) (2006). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

At the conclusion of the sentencing hearing in this case, the trial court sentenced the Defendant to an effective sentence of ten years as a Range I, Standard offender. The court then considered the manner of service of the ten years, and made the following finding:

> First, I want to applaud the work that Joy and other folks in our community do with regard - - with people who have substance abuse problems. They are very helpful. Unfortunately, there are folks who will only seek help and, therefore, only receive help, when they are incarcerated. They will not voluntarily seek that help. Ms. Blindt's record, with all due respect, is quite an example of that. Even while she had some charges pending, she was continuing without getting any help [for] her substance abuse.
>
> It is my belief that rehabilitation in her case is only going to occur with extensive incarceration. I find under 40-35-103(5) that there is a low potential for rehabilitation short of an extended incarceration.

The record does not preponderate against the trial court's findings. The Defendant committed prescription fraud three times within a few days, which resulted in the current convictions. The Defendant admitted that she consumed some of the pills procured through these frauds. The Defendant admitted she had engaged in prescription fraud on other occasions as well and that she had two prescription fraud cases pending in Alabama. After the Defendant was arrested on the prescription fraud charges in this case, she continued to illicitly use drugs, and she committed additional crimes. The Defendant admitted that she was

using drugs during the time she committed these crimes, and Laura Prosser, a probation officer, testified that the Defendant was so impaired when she met with Prosser for the presentence report interview that the Defendant could not spell her own children's names. At the time of the interview, the Defendant denied drug use and explained her state as due to her being "very tired." Just before her current incarceration, the Defendant was found in her home unconscious and admitted to Moccasin Bend Institute for "suicidal behavior" related to a drug overdose. The discharge report from Moccasin Bend Institute indicated that the Defendant was using Xanax, OxyContin, and Lortab on a daily basis. At no time, prior to incarceration, did the Defendant seek help for drug addiction, even in the face of pending criminal charges related to her drug addiction. When the Defendant was incarcerated, she finally sought help through jail programs designed to help inmates with addictions. Further, the presentence report indicates that the Defendant failed to successfully complete probation in recently imposed sentences. Thus, the record adequately supports the trial court's findings. We conclude that, in ordering confinement, the trial court considered the pertinent facts of this case and the appropriate sentencing principles. As such, its denial of alternative sentencing is presumptively correct. *See* T.C.A. § 40-35-401(d); *Mencer*, 798 S.W.2d at 549. The Defendant is not entitled to relief on this issue.

## III. Conclusion

After a thorough review of the record and the applicable law, we conclude that the trial court adhered to proper statutory sentencing procedures and considered appropriate factors when it imposed its sentences. As such, we affirm the trial court's judgments, and remand for the trial court to make corrections to the judgment form in case number 16880 previously discussed in this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE